UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WAYNE WILDING,

    *Plaintiff*,

v.                                                         CASE NO. 10-CV-12924

COMMISSIONER OF                        DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,                         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff was not disabled prior to March 13, 2009, when he became "of advanced age" within the meaning of the Commissioner's regulations. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.     REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying in part Plaintiff's claim for a period of disability and disability insurance ("DIB") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 13.)

Plaintiff was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 48.) Plaintiff's employment history includes work as a laborer in the automotive industry. (Tr. at 44, 130.) Plaintiff last worked in 1999. (*Id.*)

Plaintiff filed the instant claim on February 28, 2007, alleging that he became unable to work on June 9, 2006. (Tr. at 120-22.) The claim was denied at the initial administrative stages. (Tr. at 59.) In denying Plaintiff's claims, the Defendant Commissioner considered carpal tunnel syndrome, along with discogenic and degenerative disorders of the back, as possible bases of disability. (*Id.*) On September 17, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") William M. Manico, who considered the application for benefits *de novo*. (Tr. at 42-58.) In a decision dated September 24, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 18-25.) Plaintiff requested a review of this decision on October 5, 2009. (Tr. at 101.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 4, 2010, when the Appeals Council issued a partially favorable decision reversing in part the ALJ and concluding that because Plaintiff became "of advanced age" on March 13, 2009, under Grid Rule 202.01, he became presumptively eligible for benefits after that date, but not before. (Tr. at 8-10.) Plaintiff filed the

instant suit seeking judicial review of the Commissioner's unfavorable decision under 42 U.S.C. §405(g).

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

4

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v),(g)).

### D.     Administrative Record

A review of the medical evidence contained in the administrative record indicates that a bone scan conducted in late May 2006 of Plaintiff's cervical spine was negative. (Tr. at 176.) In June 2006, Plaintiff underwent electrodiagnostic testing at the request of his primary treating physician, Dr. George Tumaneng. (Tr. at 173.) The test results were considered abnormal and indicative of bilateral carpal tunnel syndrome. (Tr. at 175.) However, no electrodiagnostic evidence of cervical radiculopathy was seen. (*Id.*) In August 2006, Plaintiff underwent an MRI of the cervical spine. (Tr. at 182.) It was reported at that time that Plaintiff had a history of neck, right shoulder, and arm pain and numbness. (*Id.*) The examining physician reported disc herniations at the C3-4, C4-5 and C5-6 levels with some indentation of the spinal cord at the C5-6 level and misalignment of the vertebrae. (*Id.*) A "Case Analysis" prepared by an employee of the Commissioner in March 2007 stated that Plaintiff recounted that he visits friends and his grand children, cares for his personal needs, uses a riding lawnmower, drives, shops, and handles his own finances. (Tr. at 184.)

In late March 2007, Plaintiff underwent a physical examination conducted at the request of the Commissioner by J. L. Tofaute, M.D. The doctor reported that Plaintiff could walk on heels and toes, squat fully, and get on and off the examining table. (Tr. at 186.) Deep tendon reflexes were equal, and straight leg raising tests were negative. (*Id.*) Range of motion tests of the arms were negative, although testing of the shoulders did produce complaints of stiffness. (*Id.*) No significant atrophy was seen in the hands, and evidence of previous carpal tunnel surgery was seen.

(*Id.*) Carpal tunnel testing produced mild tingling but no major symptoms. (*Id.*) Plaintiff was able to pick up coins with either hand, and grip strength testing was stronger for the right (dominant hand) than the left. (*Id.*) The doctor's detailed results are contained in a supplemental report. (Tr. at 188-91.)

In early September 2007, Dr. Tumaneng completed a "Medical Source Statement (PHYSICAL)" in which he stated that while Plaintiff's ability to push or pull was moderately to severely restricted, he was capable of lifting up to 20 pounds occasionally and 10 pounds frequently. (Tr. at 209.) The doctor also stated that Plaintiff could stand and walk for up to 2 hours, and that he needed to alternate positions. (*Id.*)

In November 2007, Plaintiff was treated for a closed fracture of his left heel bone sustained when he fell from a tree stand ladder. (Tr. at 204.) In March 2008, it was reported that Plaintiff had achiness in that heel, but that "[h]e has been mountain biking and this is good exercise and should make his foot and ankle feel better." (Tr. at 206.) A second round of physical therapy was also prescribed. (*Id.*)

### E. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 21-24.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In reaching this conclusion, the ALJ utilized as a guide Medical-Vocational (Grid) Rule 202.10. As mentioned, the Appeals Council concluded that once Plaintiff became "of advanced age" on March 13, 2009, he became presumptively eligible for benefits after that date, but not before. (Tr. at 8-10.) The Appeals Council also cited Grid Rule 202.01, which directs a finding of "disabled" where the claimant has a limited education, an unskilled work history, and has reached "advanced age," defined by the Commissioner as 55 years of age. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f).

After review of the record, I suggest that the Commissioner utilized the proper legal standard in the application of the five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the Commissioner's decision.

**2.     Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 12.) Specifically, Plaintiff asserts that the ALJ failed to properly credit Dr. Tumaneng's medical opinions, and thus propounded an inaccurate hypothetical question to the vocational expert. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

The Commissioner must consider all medical opinions that are received in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(d), 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity

of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). For example, the Commissioner will generally "give more weight to the opinion of a source who has examined [the patient] than to the opinion of a source who has not examined [the patient]." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

In weighing the opinions and medical evidence, the Commissioner must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that

weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I suggest that the Commissioner properly evaluated the medical opinions provided in the record. Although Plaintiff is correct that in 2007 Dr. Tumaneng opined in a report to Plaintiff's employer that Plaintiff could "never" resume work (Tr. at 166), the most recent medical opinion from Dr. Tumaneng available to the Commissioner stated that Plaintiff, although limited in pushing and pulling, was capable of lifting up to 20 pounds occasionally and 10 pounds frequently. (Tr. at 209.) The doctor also stated that Plaintiff could stand and walk for up to 2 hours and that he needed to alternate positions. (*Id.*) These medical findings are fully consistent with the residual functional capacity determined by the ALJ and, I suggest, constitute substantial evidence supporting the ALJ's hypothetical question and his ultimate findings. The ALJ's findings are also

11

consistent with Plaintiff's own report that he uses a riding lawnmower, as well as the medical report that "[Plaintiff] has been mountain biking and this is good exercise and should make his foot and ankle feel better." (Tr. at 206.)

I further suggest that the ALJ properly discounted the Dr. Tumaneng's statements that Plaintiff should be considered disabled one half of each month (Tr. at 209), since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," *Kidd v. Comm'r*, 283 Fed. App'x 336, 341 (6th Cir. 2008), and this statement is inconsistent with other substantial evidence in the record. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).

Finally, I suggest that the Appeals Council properly applied Grid Rule 202.01 in determining that Plaintiff became disabled upon attaining his 55th birthday.

### 3.   Conclusion

For all these reasons, after review of the record, I conclude that the decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/ Charles E Binder
                                         CHARLES E. BINDER
Dated: March 14, 2011                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: March 14, 2011                     By    s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder